IN THE UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| PETER PHANEUF, of the Town of Southborough, County of Worcester, Commonwealth of Massachusetts,<br><br>          Plaintiff,<br><br>v.<br><br>POLARIS INDUSTRIES INC., of the Town of Medina, County of Hennepin, State of Minnesota,<br><br>          Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)     COMPLAINT<br>    AND JURY DEMAND |

Plaintiff Peter Phaneuf, by and through his undersigned counsel, alleges as follows:

## **INTRODUCTION**

1. In this personal injury action, Plaintiff Peter Phaneuf (hereinafter referred to as "Peter") seeks recompense for injuries he sustained when she was severely burned by the 2007 Polaris Sportsman 800 EFI All-Terrain Vehicle with Serial Number 4XAMH76A97A219392 (hereinafter referred to as "Polaris ATV") which was manufactured by Defendant Polaris Industries Inc. (hereinafter referred to as "Polaris").

2. On May 25, 2013 in the Town of Monson, County of Piscataquis and State of Maine, Peter was executing a slow turn on soft ground on his Polaris ATV when it failed to maintain lateral stability, rolled and landed on its side, trapping Peter underneath its weight.

3. Although there was no benefit to its doing so, once on its side confining Peter, the Polaris ATV continued to run for approximately ninety (90) minutes, maintaining the exhaust system at a constant temperature of approximately 468 degrees Fahrenheit.

4.  During the period of his confinement, Peter was wearing insulated boots and his right foot was in contact with the Polaris ATV in the vicinity of its scalding exhaust system, "protected" only by the machine's metal heat shield and plastic covering.

5.  Due to the absence of a fuel shut-off mechanism that automatically stops the engine when the Polaris ATV upsets laterally (hereinafter "tilt switch" ) the engine continued to run for approximately one-and-one-half hours, maintaining the temperature of the exhaust system at approximately 468 degrees, which led, in series, to the destruction of the heat shield, the melting of the plastic covering, the melting and burning of Peter's insulated boot and eventually to the painful and severe destruction of skin, fat, tendon, nerves, bone and other tissue on a substantial portion of Peter's right foot.

6.  Peter was rescued by friends and transferred by rescue personnel to a local hospital where he received initial treatment for his injury.

7.  Peter has subsequently required six surgeries and is permanently disfigured and impaired due to the burns from the Polaris ATV, all of which would have been avoided if the Polaris ATV had a tilt switch.

8.  Defendant Polaris should have taken steps to ensure that each of the ATVs which it sold was equipped with a tilt switch as standard equipment as were similar vehicles sold by Kawasaki, Honda, Yamaha and Suzuki.

9.  Due to Defendant Polaris' manufacture of and distribution of an inherently dangerous product, its failure to warn prospective purchasers, owners and operators of its ATVs of this hidden danger, and its failure to take reasonable steps to protect against it, Peter was permanently injured.

## PARTIES, JURISDICTION AND VENUE

10. Peter is an individual residing now and at all times relevant herein in the Town of Southborough, County of Worcester, and Commonwealth of Massachusetts.

11. Peter's injuries on the Polaris ATV occurred in the Town of Monson, County of Piscataquis, and State of Maine.

12. Defendant Polaris Industries Inc., is incorporated under the laws of the State of Minnesota, having its principle place of business in a state other than the State of Maine.

13. Defendant Polaris also does substantial business throughout Maine including two locations specifically in Cumberland County, including authorized Polaris dealers West-Port Motor Sports at 135 Main Street, Westbrook, Maine and Westcott & Sons, 500 Ossipee Trail, State Route 25, Gorham, Maine.

14. The matter of controversy exceeds, exclusive of interest and costs, the sum of $75,000.00.

15. This Court has jurisdiction under 28 U.S.C.

16. Venue is proper in the District of Maine of the United States District Court for adjudication of this matter; because Peter received his injury in Maine and a substantial part of the events or omissions giving rise to this claim occurred in the State of Maine, including the purchase of Peter's Polaris ATV.

## FACTUAL ALLEGATIONS

### A. **Defendant Polaris Manufactured a Dangerous and/or Defective Product that Caused Injuries to Plaintiff Phaneuf.**

17. Prior to May 25, 2013, Peter had worked as a firefighter/paramedic in Foxborough, Massachusetts.

18. Peter rode ATVs from the age of 13 and had substantial experience at the time of his injury.

19. On July 27, 2007, Defendant Polaris Industries Inc. transferred a 2007 Polaris Sportsman 800 EFI All-Terrain Vehicle with Serial Number 4XAMH76A97A219392 to its distributor Jackman Power Sports in Jackman, Maine.

20. On October 10, 2009, Peter purchased the 2007 Polaris Sportsman 800 EFI All-Terrain Vehicle (Serial # 4XAMH76A97A219392) from Jackman Power Sports, 549 Main Street, Jackman, Maine for $6,399.00 as a new vehicle.

21. The Owner's Manual that was provided with the Polaris ATV references the fact that a Polaris ATV may lose lateral stability.

22. The Owner's Manual contains a Safety Warning: "Exhaust system components are very hot during and after use of the vehicle. Hot components can cause serious burns and fire. Do not touch hot exhaust system components. Always keep combustible materials away from the exhaust system. Use caution when traveling through tall grass, especially dry grass."

23. In numerous places within the owner's manual, Defendant Polaris warns of scenarios that may lead to ATV turnover, including the recommendation of what to do should one occur.

24. In the Maintenance section of the Owner's Manual, Defendant Polaris warns "A hot exhaust system and engine can cause serious burns. Wear protective gloves when removing a spark plug for inspection."

25. At the time of its sale, the Polaris ATV did not contain a tilt switch to protect against death, serious injury or fire in the entirely feasible event the ATV lost lateral stability.

26. The Defendant failed to warn Peter at the point of purchase that if the Polaris ATV rolled its engine would continue to operate indefinitely, unlike models manufactured by competitors which were equipped with tilt switches.

27. On or about May 25, 2013, Peter was operating the Polaris ATV in the Town of Monson, County of Piscataquis, and State of Maine around 6:00 PM on a man-made ATV trail.

28. The average temperature for that area on that day was 42 degrees Fahrenheit and it had been raining.

29. As Peter was slowly turning the Polaris going between 1 and 5 mph, the left tire sank into the trail, causing the right tires to rise and the Polaris ATV rolled over.

30. Peter attempted to jump clear of the Polaris ATV, but it rolled onto him.

31. The Polaris ATV, despite the rollover, continued to run, and Peter was confined for approximately 90 minutes, during which time the engine continued to run maintaining an exhaust temperature of approximately 468 degrees Fahrenheit.

32. Peter was wearing insulated Carolina Leather Work boots and cotton socks while his right foot was restrained in close proximity to the Polaris ATV's exhaust system.

33. The searing heat of the exhaust system destroyed the ATV's heat shield, melted its plastic cowling and caused progressively worsening burns to Peter's right foot and ankle.

34. Eventually friends and a member of the Maine Warden Service came to Peter's assistance and were able to free him from the overturned Polaris ATV.

35. Peter was transported to Mayo Regional Hospital where he received initial treatment for his injuries and he was discharged to seek surgical care, which he did.

    B. **In 2009 when Peter bought his Polaris ATV new, Defendant Polaris Knew that the Absence of a Fuel Shut-Off Mechanism on an ATV which is known to lose lateral stability created a risk of serious injury or death to its operator**

36. On April 18, 2007, James Lacy, a resident of Kentucky, was riding his Polaris Sportsman All-Terrain Vehicle manufactured by Defendant Polaris.

37. Mr. Lacy was travelling slowly down a hill when his ATV rolled over.

38. Despite the roll-over, the engine of the ATV continued to run causing him to lose an ear and inflicting severe injuries to his leg, and back.

39. Mr. Lacy filed a lawsuit against Polaris in which he alleged that his ATV was defective because it did not have a tilt switch.

40. By 2006, numerous other All-Terrain Vehicle manufacturers, such as Honda, Yamaha, Suzuki, and Kawasaki, included tilt switches on their ATVs as standard equipment to protect operators from serious injury in the event of a rollover.

41. In light of the claim made by Mr. Lacy and the practice within the ATV industry as a whole, by 2009 Defendant Polaris knew or should have known of the hazard created by not equipping an ATV with a tilt switch.

42. At the time Defendant Polaris sold Peter his vehicle in 2009, Defendant Polaris knew that a tilt switch was a feasible and practical method of protecting him from serious injury or death.

C. **Had Defendant Polaris supplied a tilt switch in 2009 as did many competitors, or advised Peter that such a switch was available, Peter would have not sustained an injury**

43. The Polaris ATV does not have a tilt switch.

44. The engine of the Polaris ATV continues to run even when the ATV is on its side at 90 degrees.

45. According to Defendant Polaris' Code of Business Conduct and Ethics, "Polaris, like many companies, reviews and analyzes public information about competitors so we can

6

better understand the marketplace and our customers. We promote safety throughout the product development process and take field action to correct post-manufacturing issues."

46. The temperature of the exhaust system is approximately 468 degrees Fahrenheit when the ATV runs for approximately ten minutes.

47. If the Polaris ATV is shut down, the temperature of the heat shield falls to approximately 100 degrees within 90 seconds.

**COUNT 1**
**(Strict Liability v. Defendant Polaris)**

48. Plaintiff realleges and incorporates by reference the allegations contained in the above Paragraphs 1 through 47 of this Complaint as though fully set forth at length herein.

49. At all times material herein, Defendant Polaris was, throughout the United States and elsewhere, in the business of designing, manufacturing, assembling, marketing, distributing, and selling all-terrain vehicles, including the Polaris ATV.

50. Defendant Polaris designed, manufactured and placed the Polaris ATV into the stream of commerce when it sold it to Peter, new, on October 10, 2009.

51. At the time the Polaris ATV was manufactured and placed into the stream of commerce, the Polaris ATV was defective and unreasonably dangerous, beyond the contemplation of the ordinary consumer, because it did not have a tilt switch, such that Defendant Polaris is strictly liable for any resulting injuries.

52. The failure of Polaris to incorporate a tilt switch in its ATV rendered it defective and unreasonably dangerous to those using it, including Peter, in one or more of the following ways:

    a. The Polaris ATV was known to have an exhaust system that would become dangerously hot which could produce burn injuries;

7

      b. The Polaris ATV was known to possibly roll-over during its operation;

      c. The Polaris ATV, on at least one occasion prior to May 25, 2013, was known to have rolled over and due to the absence of a tilt switch, injured the operator of that ATV because the engine continued to run;

      d. The Polaris ATV lacked adequate warnings and instructions about the absence of a tilt switch on the Polaris ATV;

      e. As late as 2006, many ATV manufacturers provided tilt switches as standard equipment; and

      f. Other defects and instances of unreasonably dangerous conditions of the Polaris ATV to be shown at trial.

53. The defective and unreasonably dangerous condition of the Polaris ATV was the proximate cause of Peter's severe injuries.

54. At the time the Polaris ATV left its control, Defendant Polaris knew, or should have known, that the failure to incorporate a tilt switch in the Polaris ATV rendered it defective and unreasonably dangerous, and that the intended and foreseeable users of the Polaris ATV would not realize the dangerous condition.

55. As a result, Peter has suffered and will continue to suffer additional disability, disfigurement, pain and inconvenience, loss of enjoyment of life, interference with his usual and regular activities, embarrassment, mental anguish, humiliation, depression and anxiety, all to Peter's loss in an amount to be determined by the jury at trial in accordance with the law.

56. Because of the described injuries, Peter has required hospitalizations; treatment by physicians, surgeons, nurses, and therapists; home care; technicians; and medications; and

will continue to require medical care and services in the future, and has suffered and in the future will likely suffer loss of wages, to his economic loss in an amount to be determined by the jury.

WHEREFORE, Peter requests judgment against Defendant Polaris for fair and reasonable compensation for his losses, noneconomic damages and economic damages in an amount to be determined at trial, lost wages, medical expenses and costs and disbursements incurred.

## COUNT 2
### (Negligence v. Defendant Polaris)

57.     Plaintiff realleges and incorporates by reference the allegations contained in the above Paragraphs 1 through 56 of this Complaint as though fully set forth at length herein.

58.     Defendant Polaris owed a duty to Peter to design, manufacture, distribute and sell the Polaris ATV so that it was safe for its intended or unintended and foreseeable uses and held a duty to warn Peter at the time of is purchase and thereafter of the defective and dangerous condition of the Polaris ATV, including the absence of a tilt switch and its availability on the ATVs manufactured by its competitors.

59.     Defendant Polaris breached its duty to Peter and was negligent in one or more of the following ways:

   a. Designing, manufacturing, distributing and selling the Polaris ATV without a tilt switch in the event of a roll-over which would protect against the known high temperatures of the exhaust system;

   b. Failing to provide adequate safeguards to prevent the engine from continuously running in the event of a roll-over of the Polaris ATV

   c. Failing to adequately test and inspect the Polaris ATV in regards to roll-overs and the exhaust temperature of a continuously running ATV;

      d. Failing to provide adequate warnings and instructions to advise operators of the absence of a fuel shut-off mechanism;

      e. Failing to warn Peter at the time of his purchase and thereafter of the danger presented to users by the lack of a tilt switch on Polaris ATVs, as well as of its availability on the machines manufactured by its competitors; and

      f. Such other acts of negligence as may be determined through discovery and/or proven at trial.

60. Defendant Polaris knew, or should have known, that any of the foregoing acts or omissions would create an unreasonable risk of harm to users of the Polaris ATV, including Peter.

61. As a result, Peter has suffered and will continue to suffer additional disability, disfigurement, pain and inconvenience, loss of enjoyment of life, interference with his usual and regular activities, embarrassment, mental anguish, humiliation, depression and anxiety, all to Peter's loss in an amount to be determined by the jury at trial in accordance with the law.

62. Because of the described injuries, Peter has required hospitalizations; treatment by physicians, surgeons, nurses, and therapists; home care; technicians; and medications; and will continue to require medical care and services in the future, and has suffered and in the future will likely suffer loss of wages, to his economic loss in an amount to be determined by the jury.

WHEREFORE, Peter requests judgment against Defendant Polaris for fair and reasonable compensation for his losses, noneconomic damages and economic damages in an amount to be determined at trial, lost wages, medical expenses and costs and disbursements incurred.

## COUNT 3
### (Breach of Express & Implied Warranty v. Defendant Polaris)

63. Plaintiff realleges and incorporates by reference the allegations contained in the above Paragraphs 1 through 62 of this Complaint as though fully set forth at length herein.

64. At all times material herein, Defendant Polaris was, throughout the United States and elsewhere, in the business of designing, manufacturing, assembling, marketing, distributing, and selling all-terrain vehicles, including the Polaris ATV.  In so doing, Defendant Polaris expressly and impliedly warranted and represented that the Polaris ATV was merchantable, fit and safe for the ordinary and practical purposes for which it was sold, in this case, for the particular purpose of outdoor use, and further that the vehicle was represented to be free from defects.

65. Peter relied on Defendant Polaris' warranties and representations that the Polaris ATV was merchantable, fit and safe for the ordinary and practical purposes for which it was sold and further that the ATV was free from defects.

66. The Polaris ATV was not merchantable, fit or safe for the ordinary and practical purposes for which it was sold, nor was it free from defects because the absence of a tilt switch exposed the operator to dangerously high temperature in the event of a roll over.

67. Defendant Polaris breached its warranties and representations because the Polaris ATV failed to conform to the warranties and representations upon which Peter relied.

68. Defendant Polaris' breach of its warranties and representations about the Polaris ATV proximately caused the injuries and damages to Peter.

69. As a result, Peter has suffered and will continue to suffer additional disability, disfigurement, pain and inconvenience, loss of enjoyment of life, interference with his usual and

regular activities, embarrassment, mental anguish, humiliation, depression and anxiety, all to Peter's loss in an amount to be determined by the jury at trial in accordance with the law.

70. Because of the described injuries, Peter has required hospitalizations; treatment by physicians, surgeons, nurses, and therapists; home care; technicians; and medications; and will continue to require medical care and services in the future, and has suffered and in the future will likely suffer loss of wages, to his economic loss in an amount to be determined by the jury.

WHEREFORE, Peter requests judgment against Defendant Polaris for fair and reasonable compensation for his losses, noneconomic damages and economic damages in an amount to be determined at trial, lost wages, medical expenses and costs and disbursements incurred.

### COUNT 4
### (Punitive Damages v. Defendant Polaris)

71. Plaintiff realleges and incorporates by reference the allegations contained in the above Paragraphs 1 through 70 of this Complaint as though fully set forth at length herein.

72. Defendant Polaris has shown deliberate conduct that is so outrageous that malice can be implied in one or more of the following ways:

   a. Prior to the sale of the Polaris ATV to Peter, Defendant Polaris had actual knowledge that the absence of a tilt switch had caused a serious injury to an operator of a Polaris ATV, James Lacy.

   b. Prior to the sale of the Polaris ATV to Peter, Defendant Polaris had knowledge that many of its competitors, including Honda, Yamaha, Suzuki and Kawasaki, provided tilt switches as standard equipment.

   c. Despite Defendant Polaris' actual knowledge that the lack of a tilt switch had seriously injured James Lacy and posed a risk of serious injury or death to

12

       operators of its Polaris ATVs, Defendant Polaris took no action to remediate this problem.

    d. Despite Defendant Polaris' knowledge of the risk of serious injury or death presented by the absence of a tilt switch, Defendant Polaris did not take reasonable and appropriate steps to warn consumers and users of this hazard, including Peter at the time of his purchase or thereafter.

    e. To date, Defendant Polaris has not provided notice to consumers and users of its ATVs that the failure to incorporate a tilt switch in its ATVs, as have other manufactures, has led to two serious injuries.

73.   The conduct of the Defendant was willful, wanton, and outrageous and in total disregard of Peter's safety, health and well-being.

74.   The conduct of the Defendant was so outrageous as to imply malice and entitle Peter to punitive damages.

WHEREFORE the plaintiff requests that a reasonable amount of punitive damages be awarded to deter the Defendant from this type of conduct in the future.

### DEMAND FOR JURY TRIAL

Plaintiff Peter Phaneuf hereby demands a trial by jury on all issues in this Complaint.

Dated: June 7, 2016

                            /s/Terrence D. Garmey
                            Terrence D. Garmey, Esq. Bar No. 1656
                            *Attorney for Plaintiff*
                            **TERRY GARMEY & ASSOCIATES**
                            482 Congress Street, Suite 402
                            Portland, ME 04101
                            (207) 899-4644